UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS BURKE, et al.,

      Plaintiffs,
 v.              **DECISION AND ORDER**
                 07-CV-663S
LASH WORK ENVIRONMENTS, INC.,
et al.,

      Defendants.

## I. INTRODUCTION

Plaintiffs commenced this action by filing a complaint in this Court, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Defendants move for dismissal based on lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56. For the reasons discussed below, Defendants' Motions to Dismiss are granted.

## II. BACKGROUND

**A. Facts**

Defendant Gary M. Casey purchased LASH Equipment Corp. on May 29, 1987. (G. Casey Declaration, Docket No. 23-3, ¶ 2.) On October 16, 1998, LASH Equipment Corp. changed its name LASH Work Environments, Inc. ("LASH").

LASH contributed to the Buffalo Carpenters' Pension Fund, as required by its collective bargaining agreement with the United Brotherhood of Carpenters and Joiners of

1

America. (G. Casey Decl., ¶¶ 5-6.) But on July 6, 1995, LASH terminated the collective bargaining agreement and stopped contributing to the pension fund. (Id. ¶ 7; Johnsen Decl., Docket No. 30-2, ¶ 4.) Thereafter, pursuant to an escrow agreement dated June 27, 2001, LASH made nine payments to counsel for the Fund, as escrow agent, totaling $53,634.08. (G. Casey Decl., Ex. C.)

By letter dated November 30, 2001, the Fund notified LASH that, in accordance with the provisions of ERISA, it was assessing withdrawal liability for its withdrawal from participation in the pension fund. (Zini Decl., Docket No. 23-4, Ex. A; Johnsen Decl., ¶ 4.) According to the formula in section 4211(b) of ERISA, the Fund computed LASH's total withdrawal liability to be $256,081, which it directed LASH to pay in quarterly payments of $5,954.26. (Id.)

On March 28, 2002, LASH sought redetermination of its withdrawal liability from the Fund. (Compl., Docket No. 1, ¶ 13.) On July 16, 2002, the Fund denied LASH's request for review and reaffirmed its initial determination of withdrawal liability. (Compl., ¶ 14). LASH then initiated arbitration proceedings on September 12, 2002, to challenge the Fund's assessment of withdrawal liability in accordance with the provisions of ERISA. (Compl., ¶ 1.) During the course of the arbitration proceedings, LASH made interim withdrawal liability payments to the Fund totaling $11,908.52. (G. Casey Decl., ¶ 9, Ex. C.)

Before completion of the arbitration proceedings, LASH and the Fund entered into a settlement agreement, dated September 1, 2004, which purported to resolve their dispute over LASH's withdrawal liability obligations. (G. Casey Decl., ¶ 10, Ex. C; Johnsen Decl., ¶ 8.)

In accordance with Paragraph 1 of the settlement agreement, the Fund agreed to accept the following amounts as full payment for LASH's withdrawal liability obligations: (1) $11,908.52 paid by LASH as interim payments during the arbitration proceedings; (2) $53,634.08 in escrow paid by LASH, plus any accrued interest; (3) four quarterly payments of $6,000, to commence on October 29, 2004; (4) one payment of $5,000, to be paid on October 29, 2005; and (5) 42 quarterly payments of $4,000, to commence on January 29, 2006. (G. Casey Decl., Ex. C.)

Paragraph 4 of the agreement provided that:

> The Pension Fund acknowledges the termination of Lash's participation in the Pension Fund. Further, the Pension Fund shall accept the payments set forth in this Agreement in full and complete satisfaction of any and all claims it has, or may have, arising from Lash's participation in the Pension Fund. The Pension Fund shall execute and deliver to Lash a Release in the form attached hereto as Exhibit B. Lash shall also execute and deliver a reciprocal Release in favor of the Pension Fund in the form attached hereto as Exhibit C.

(Id.)

Paragraph 9 of the agreement further provided that:

> If the Pension Fund breaches any obligation under this Agreement, Lash shall provide the Pension Fund with written notice of the breach and the Pension Fund shall have 10 calendar days to remedy the breach. If the Pension Fund fails to timely remedy the breach after notice, then in any litigation over the breach, the prevailing party shall be entitled to recover its attorneys' fees in addition to any other remedy ordered by the court.

(Id.)

The Fund thereafter executed a release in accordance with the terms of the agreement, and the parties signed a stipulation discontinuing the arbitration with prejudice. (G. Casey Decl., Ex. D, Ex. E.)

LASH made payments under the agreement until October 29, 2006, when it failed to make its required payment. (Johnsen Decl., ¶ 9.) The Fund then sent a letter to LASH dated January 23, 2007, as a reminder that payment had not been received. (Johnsen Decl., ¶ 9, Ex. A.) By letter dated February 4, 2007, LASH responded that it expected to catch up on its payments in 30 days. (Johnsen Decl., ¶ 10, Ex. B.)

On March 15, 2007, Evan Casey (Gary M. Casey's son) formed Integrated Work Environments, LLC, ("Integrated"). (E. Casey Decl., Docket No. 25-2, ¶ 17.)

In a letter dated May 7, 2007, LASH informed the Fund that it would be ending its business operations and closing, and that it would therefore be unable to make further withdrawal liability payments. (Johnsen Decl., Ex. D.) By letter dated July 9, 2007, the Fund requested that LASH provide certain financial information in accordance with 29 U.S.C. § 1399(a). (Compl., ¶ 21.)

**B.    Procedural History**

The Fund commenced this action on October 4, 2007, by filing a complaint in the United States District Court for the Western District of New York. Defendants filed answers on November 6, 2007 and November 7, 2007.

On June 30, 2008, Defendants each moved for dismissal of the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, for summary

4

judgment pursuant to Rule 56. (Docket Nos. 23, 25.[1]) Briefing concluded on August 29, 2008, at which time this Court took the motion under advisement without oral argument.

## III. DISCUSSION

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "lack of jurisdiction over the subject matter." Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1945, 173 L.Ed.2d 868 (2009) (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)). A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing the existence of federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008). The court may also consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained

---

[1] Integrated joined the Motion to Dismiss filed by the other defendants. In support of the motions, Defendants collectively filed a memorandum of law, the Declaration of Gary M. Casey, the Declaration of Gregory Zini, Esq., the Declaration of Evan Casey, and a reply memorandum of law. (Docket Nos. 23, 25, 31.) In opposition, Plaintiffs filed a memorandum of law and the Declaration of Jonathan Johnsen, Esq. (Docket No. 30.)

in affidavits. J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001).

**B.    Analysis**

    **1.    Defendants' Motions to Dismiss**

The Fund alleges that LASH and the other defendants have failed to make withdrawal-liability payments in violation of ERISA. (Compl., ¶ 28.) The Fund also alleges other violations of ERISA: (1) that LASH has failed to provide financial disclosures required under section 1399(a) of ERISA; (2) that LASH rearranged its corporate structure to avoid withdrawal liability, in violation of section 1392(c) of ERISA; and (3) that Integrated conducts business that was formerly conducted by LASH and is therefore an alter ego and/or successor entity to LASH, such that it is liable for LASH's withdrawal liability. (Compl., ¶¶ 22-26.)

Defendants argue that the complaint should be dismissed for lack of subject matter jurisdiction because the Fund's claim is simply that LASH failed to make payments under the settlement agreement. According to Defendants, the settlement agreement stands alone as a contract between the parties, separate from any ERISA withdrawal obligations. Failure to make payments under the agreement is therefore not a question of federal law, but rather, a breach of contract matter that should be pursued in state court.

In response, the Fund counters that the ERISA violations alleged in its complaint are sufficient to establish a basis for federal jurisdiction because they relate to ERISA withdrawal-liability payments.

In this Court's view, whether the Fund has established federal jurisdiction hinges on the validity of its primary argument: that the settlement agreement represents a modification of the amount and schedule of the withdrawal liability owed by LASH, such that the Fund is still seeking a judgment for withdrawal-liability payments authorized under ERISA.

### 2.     Enforcement of Withdrawal-Liability Payments

"Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).  "They possess only that power authorized by Constitution and statute, see Willy v. Coastal Corp., 503 U.S. 131, 136-37, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), which is not to be expanded by judicial decree, Am. Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951)."  Id.

Section 1401 of ERISA authorizes federal courts to enforce collection of withdrawal-liability payments in only two circumstances.  First, if an employer does not contest the amount of withdrawal liability owed by seeking arbitration within the statutory time limits, a pension fund may bring suit in federal court for collection of that amount.  Second, once arbitration proceedings have been decided in favor of one party, either party may bring an

action in federal court to either enforce, vacate or modify the award.

Neither of these circumstances applies here. Not only did LASH seek arbitration of the withdrawal liability assessed against it, but the arbitrator dismissed the action with prejudice before rendering a decision.

To exercise jurisdiction over the Fund's claim as an action to collect ERISA withdrawal liability payments, this Court would have to recognize a method of collection not authorized by ERISA. Specifically, the Fund urges that a party to a settlement agreement reached before the completion of arbitration should be permitted to bring suit in federal court to collect payments ordered by the agreement, on the theory that they remain withdrawal-liability payments. But the nature of the payments changes once a settlement is reached in lieu of an arbitrator's decision. A settlement is a bartered-for agreement that occurs outside the confines of ERISA. The settlement reduces the withdrawal-liability payments owed under ERISA to payments due and owing under the terms of a contract — the settlement agreement. ERISA has no provision for collection of payments due under such an agreement, despite the fact that the underlying subject of the settlement is ERISA liability. In light of the jurisdictional limitations on federal courts, this Court cannot create an avenue of enforcement that does not exist under the statute.

### 3. Enforcement of Private Settlement Agreements

Federal courts have jurisdiction to enforce a private settlement agreement only if the agreement itself provides a basis for jurisdiction. In accordance with the rule established by the Supreme Court in <u>Kokkonen</u>, "[e]nforcement of [a] settlement agreement . . . is

more than just a continuation or renewal of [a] dismissed suit, and hence requires its own basis for [federal] jurisdiction." 511 U.S. at 378. The Second Circuit, following Kokkonen, has held that "[a]bsent some action making a settlement agreement part of a dismissal order or some other, independent basis for jurisdiction, enforcement of a settlement agreement is for the state courts." Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d. Cir. 1996) (citing Kokkonen, 511 U.S. at 381-82).

In general, courts have found an independent basis for jurisdiction in actions involving the settlement of ERISA claims only where the settlement agreement either expressly or impliedly included provisions of ERISA such that "enforcement of the . . . agreement itself [would] require adjudication of substantive federal law issues." Bd. of Trs. of Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc., 97 F.3d 1479, 1485 (D.C.Cir. 1996); see Miele v. Pension Plan of N.Y. State Teamsters Conf. Pension & Ret. Fund, 72 F.Supp.2d 88, 95 (E.D.N.Y. 1999); Boren v. N.L. Indus., Inc., 889 F.2d 1463, 1466 (5th Cir. 1989); see also Shaffer v. Veneman, 325 F.3d 370, 355 (D.C.Cir. 2003) (federal court did not have jurisdiction over settlement agreement that did not require interpretation or application of a federal statute).

In contrast, the settlement agreement here does not include any provisions of ERISA, either express or implied. Moreover, the agreement does not require LASH to make payments of any kind that would require the application of ERISA provisions. In fact, the agreement states that "the Pension Fund shall accept the payments set forth in this Agreement in full and complete satisfaction of any and all claims it has, or may have, arising from Lash's participation in the Pension Fund." Therefore, enforcement of the

9

agreement would not require an adjudication of a substantive issue arising from the provisions of ERISA, and this Court cannot exercise federal jurisdiction over the settlement agreement on that basis.

The Fund has also argued that its complaint establishes other bases for jurisdiction, namely, LASH's failure to provide financial documentation, transactions designed to evade or avoid withdrawal liability, and liability of the other Defendants due to the common control and/or alter-ego provisions of ERISA. This Court finds, however, that these arguments are insufficient to establish jurisdiction inasmuch as they are all premised on actions or omissions that occurred after the signing of the settlement agreement, and therefore present issues to be considered in relation to a breach of the agreement, not violations of ERISA rights. Federal jurisdiction is therefore lacking.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that the Fund has not established an independent basis for jurisdiction over the parties' settlement agreement. Defendants' Motions to Dismiss will therefore be granted. Defendants' alternate request for summary judgment is moot.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motions to Dismiss (Docket Nos. 23, 25) are GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:      March 24, 2010
            Buffalo, New York

                                                    /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                         Chief Judge
                                                  United States District Court